**REICH RADCLIFFE & HOOVER LLP**
Marc G. Reich (SBN 159936)
mgr@reichradcliffe.com
Adam T. Hoover (SBN 243226)
adhoover@reichradcliffe.com
4675 MacArthur Court, Suite 550
Newport Beach, CA 92660
Phone: (949) 975-0512
Fax: (949) 208-2839

**LIFSHITZ & MILLER LLP**
Joshua M. Lifshitz (*Pro Hac Vice to be submited*)
jml@jlclasslaw.com
821 Franklin Ave., Suite 209
Garden City, NY 11530
Phone: (516) 493-9780
Fax: (516) 280-7376

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIANNE RONSHAGEN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>YUME, INC., MITCHELL HABIB, ADRIEL LARES, ELIAS NADER, CHRISTOPHER PAISLEY, ERIC SINGER, JOHN MUTCH, BRIAN KELLEY, STEPHEN DOMENIK, RHYTHMONE, PLC, REDWOOD MERGER SUB I, INC., and REDWOOD MERGER SUB II, INC.,<br><br>Defendants, | Case No: 3:18-cv-00460<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**Demand for Jury Trial** |

Plaintiff Dianne Ronshagen ("Plaintiff") by and through her undersigned attorneys, brings this class action on behalf of herself and all others similarly situated, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by YuMe, Inc. ("YuMe" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on YuMe's website concerning the Company's public statements; and (d) review of other publicly available information concerning YuMe and the Defendants.

## SUMMARY OF THE ACTION

1. This action is brought as a class action by Plaintiff on behalf of herself and the other public holders of the common stock of YuMe against the Company and the members of the Company's board of directors (the "Board") for violations of Sections 14(d)(4), 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(d)(4), 78n(e), 78t(a), and SEC Rule 14d-9, 17 C.F.R. §240.14d-9(d) ("Rule 14d-9") in connection with the proposed transaction (the "Proposed Transaction" or "Merger") announced on September 5, 2017, pursuant to which YuMe will be acquired by RhythmOne, PLC ("RhythmOne"), through RhythmOne's wholly-owned subsidiaries Redwood Merger Sub I, Inc. ("Purchaser") and Redwood Merger Sub II, Inc. ("Merger Sub II").

2. On September 4, 2017, YuMe's Board of Directors (the "Board") caused the Company to enter into an Agreement and Plan of Merger and Reorganization (the "Merger Agreement") with RhythmOne, Purchaser and Merger Sub II. Pursuant to the terms of the Merger Agreement, Purchaser has agreed to commence an exchange offer (the "Offer") to purchase all of the outstanding shares of common stock of YuMe for (i) $1.70 in cash and (ii) 7.325 ordinary shares of RhythmOne. Purchaser would then merge with and into YuMe, with YuMe being the surviving company. Thereafter, YuMe will merge with and into Merger Sub II, with Merger Sub II surviving as a wholly owned subsidiary of

RhythmOne. As a result, the former stockholders of YuMe will hold approximately 34% of RhythmOne.

3. The Merger Agreement includes customary termination provisions for both RhythmOne and YuMe, and provides that, in connection with the termination of the Merger Agreement under specified circumstances, including a termination by YuMe to accept a superior proposal and enter into a definitive agreement providing for such superior proposal, YuMe will pay RhythmOne a termination fee of $5,536,790.

4. Further, if the minimum number of shares are not tendered to Purchaser by March 31, 2018 (which may be extended to April 30, 2018), YuMe will pay RhythmOne expenses in connection with the Merger Agreement in an amount up to $500,000.

5. On January 4, 2017, YuMe filed a Solicitation/Recommendation Statement on Schedule 14D-9 (the "Solicitation Statement") with the SEC. The Solicitation Statement, which recommends that YuMe stockholders tender their shares in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the financial forecasts of RhythmOne; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Deutsche Bank; (iii) certain forecasts of the amount and timing of certain cost savings and operating efficiencies projected by the Company's management to result from the Proposed Transaction; and (iv) Company insiders' potential conflicts of interest. The failure to adequately disclose such material information constitutes a violation of Sections 14(d), 14(e) and 20(a) of the Exchange Act as YuMe stockholders need such information in order to make a fully informed decision whether to tender their shares in support of the Proposed Transaction or seek appraisal.

6. The Proposed Transaction serves no legitimate business purpose of YuMe but rather is an attempt by Defendants to enable RhythmOne to benefit unfairly from the transaction at the expense of YuMe's public shareholders. The proposed plan will, for grossly inadequate consideration, limit Plaintiff and the other members of the Class their right to share proportionately in the future success of YuMe and its valuable assets, while permitting RhythmOne to reap huge benefits from the transaction.

7. By reason of the foregoing, the Individual Defendants have violated their fiduciary duties to YuMe. Plaintiff and the Class have suffered and will suffer irreparable injury unless Defendants are enjoined from breaching their fiduciary duties and from carrying out the aforesaid plan and scheme.

8. As set forth more fully herein, Plaintiff seeks to enjoin Defendants from proceeding with the Proposed Transaction. In the event that the Proposed Transaction is consummated, Plaintiff seeks to recover damages from the Defendants for their breaches of fiduciary duties and from RhythmOne and its affiliates for aiding and abetting said breaches.

**JURISDICTION AND VENUE**

9. This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(d)(4), 14(e) and 20(a) of the Exchange Act.

10. This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

11. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District. Further, the Company's principal executive offices are located in this District.

**THE PARTIES**

12. Plaintiff is, and has been at all times relevant hereto, the owner of YuMe common stock.

13. Defendant YuMe is a Delaware corporation with its principal executive offices located at 1204 Middlefield Road, Redwood, California 94063. The Company's common stock is traded on the NYSE under the symbol "YUME."

14. Defendant Mitchell Habib ("Habib") has been a director of the Company since June 2013.

15. Defendant Adriel Lares ("Lares") has been a director of the Company since June 2013.

16. Defendant Elias Nader ("Nader") has been a director of the Company since May 2016.

17. Defendant Christopher Paisley ("Paisley") has been a director of the Company since November 2012.

18. Defendant Eric Singer ("Singer") has been a director of the Company since May 2016.

19. Defendant John Mutch ("Mutch") has been a director of the Company since July 27, 2017.

20. Defendant Brian Kelley ("Kelley") has been a director of the Company since July 27, 2017.

21. Defendant Stephen Domenik ("Domenik") has been a director of the Company since July 27, 2017.

22. Defendants Habib, Lares, Nader, Paisley, Singer, Mutch, Kelley and Domenik are collectively referred to herein as the "Individual Defendants."

23. Defendant RhythmOne is a public limited company incorporated under the laws of England and Wales.

24. Defendant Purchaser is a Delaware corporation and a wholly-owned subsidiary of RhythmOne.

25. Defendant Merger Sub II is a Delaware corporation and a wholly-owned subsidiary RhythmOne.

26. The Individual Defendants, RhythmOne, Purchaser and Merger Sub II are collectively referred to herein as the "Defendants."

## DEFENDANTS' FIDUCIARY DUTIES

27. By reason of the Defendants' positions with the Company as directors and/or officers, said individuals are in a fiduciary relationship with Plaintiff and the other public shareholders of YuMe and owe Plaintiff and the other members of the Class a duty of good faith, fair dealing, loyalty and full and candid disclosure.

28. By virtue of their positions as directors and/or officers of YuMe, the Defendants, at all relevant times, had the power to control and influence, and did control and influence and cause YuMe to engage in the practices complained of herein.

29. Each of the Defendants is required to act in good faith, in the best interests of the Company's shareholders and with due care, including reasonable inquiry, as would be expected of an ordinarily prudent person. In a situation where the directors of a publicly-traded company undertake a transaction that may result in a change in corporate control, Delaware law imposes the obligation on the directors to take all steps reasonably required to maximize the value that shareholders will receive rather than use a change of control to benefit themselves, and to disclose all material information concerning the proposed change of control to enable the shareholders to make an informed voting decision. To diligently comply with this duty, the directors of a corporation may not take any action that:

   a. adversely affects the value provided to the corporation's shareholders;

   b. contractually prohibits them from complying with or carrying out their fiduciary duties;

   c. discourages or inhibits alternative offers to purchase control of the corporation or its assets; or

   d. otherwise adversely affects their duty to search and secure the best value reasonably available under the circumstances for the corporation's shareholders.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

30. YuMe, together with its subsidiaries, provides digital video brand advertising solutions in the United States and internationally. The Company's proprietary technologies serve the needs of brand advertisers and enable them to find and target audiences across a range of Internet-connected devices and digital media properties. It offers software to monetize professionally-produced content and applications for digital media properties. The Company enables digital video advertising by matching relevant audiences available through its digital media property partners with appropriate advertising campaigns from its advertising customers.

### The Company Announces the Proposed Transaction

31. On September 5, 2017, the Company issued a press release announcing the Proposed Transaction, which stated, in pertinent part:

*Combined entity will provide a fully-integrated, end-to-end online advertising solution, driving advertising efficiency and effectiveness*

*YuMe Shareholders to Receive US $1.70 per Share in Cash and 7.325 shares of RhythmOne Stock which equates to total consideration of approximately US $185 million*

*YuMe Stockholders will own approximately 34% of Combined Entity*

*Anticipated Run Rate Cost Synergies of US $10-12M in First Full Year*

*Ted Hastings RhythmOne's CEO, to Lead Combined Company with Top Talent Management Team*

SAN FRANCISCO--(BUSINESS WIRE)-- RhythmOne plc (LSE AIM: RTHM) today announced that it has entered into a definitive agreement with YuMe, Inc. (NYSE: YUME) to acquire all its issued and to be issued share capital for a total consideration of approximately US $185M based on current exchange rates. The transaction is expected to close by Q1 2018.

The combination of YuMe and RhythmOne will bring together demand-side and supply-side strengths in the fast growing segments of mobile, video, connected TV ("CTV") and programmatic trading. The combined marketplace is anticipated to be a top five comScore ranked marketplace that will facilitate seamless, transparent connections between thousands of advertisers and a massive supply of brand-safe inventory. The RhythmOne platform is purpose-built to meet a broad range of campaign objectives, providing turnkey solutions for both brand and performance campaigns. Furthermore, the platform will provide advertisers with a credible, scaled and independent alternative to entrenched players.

*   *   *

Management

RhythmOne's CEO Ted Hastings will continue in his role as President and CEO of the combined company. Additionally, YuMe will appoint two directors to the newly constituted board of directors, one of whom will be Eric Singer, who will become the Chairman of the Board.

Transaction details

Under the terms of the agreement, YuMe shareholders will receive $1.70 per share in cash and 7.325 shares in RhythmOne stock which equates to a total consideration of $185M.

YuMe's directors and officers and stockholders owning more than 10% of YuMe, and each of their respective affiliates, who among them hold approximately 31.6% of the issued YuMe shares, have signed tender and support agreements consenting to tender their share and not to offer, sell, grant any option to purchase or otherwise dispose of any RhythmOne shares received by them for a period of six months from closing of the transaction.

The acquisition is conditional on YuMe stockholders tendering at least a majority of the issued and outstanding YuMe shares. The acquisition is also subject to other conditions customary for transactions of this nature and requires clearance by the relevant competition authority, including the expiration or termination of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976. RhythmOne will

register the shares offered to YuMe stockholders with the US Securities and Exchange Commission.

The boards of directors of RhythmOne and YuMe have each unanimously approved the acquisition.

The transaction is expected to close by the first quarter of 2018.
Numis Securities Limited is serving as financial advisor to RhythmOne and Torys LLP is serving as legal counsel to RhythmOne. Deutsche Bank is serving as financial advisor to YuMe and Pillsbury Winthrop Shaw Pittman LLP is serving as legal counsel to YuMe.

32. The Proposed Transaction, as currently contemplated, is unfair to YuMe's shareholders, who have not been informed of any definitive offer price, but have been left in the dark as to the true value of this deal. In so doing, the Defendants have breached their fiduciary duties to the Company's shareholders.

33. The consideration offered in connection to the Proposed Transaction is wholly unfair and inadequate to shareholders, as, among other things, the value of the Company and its common stock is in excess of the amount offered given the Company's potential for future earnings and growth.

34. For example, on May 8, 2017, YuMe announced its financial results for the first quarter 2017. In particular, the Company noted a gross margin of 52.3%, compared to 47.8% in the first quarter of 2016, and net income of $1.2 million, or $0.03 per diluted share, compared to net loss of $3.6 million, or $0.10 per diluted share, in the first quarter of 2016.

35. The Company's CEO, Paul Porrini, stated the following regarding the results:

> We had a strong Q1 executing well against our financial and strategic goals and our Q2 outlook illustrates our continued confidence in the business. Our revenue exceeded consensus and gross margins continued to show strength. For the first time in the company's history, we produced positive net income in the first quarter coupled with the highest ever adjusted EBITDA results for the first quarter. We're proud that while reaching these profitability milestones, we continue to be encouraged by our programmatic growth and performance.
>
> ***In our view, all these metrics confirm the underlying health of our business. We expect to continue this momentum through the rest of 2017.***

(Emphasis added).

36.     Also, in June 2017, YuMe declared a special cash dividend of $1.00 per share and a quarterly cash dividend of $0.03 per share. Both dividends totaled $35.6 million and were paid on July 7, 2017 to stockholders of record as of the close of business on July 3, 2017.

37.     Further, CEO Paul Porrini, stated:

> We are very pleased to report that in the second quarter, we returned to revenue growth, significantly reduced operating expenses, generated positive net income and exceeded our prior adjusted EBITDA guidance. We continue to benefit from the strength in our programmatic business and are solidifying our position through industry leading innovation such as our connected TV initiatives… ***Our continued focus on operational efficiency helped make the first half of 2017 the most profitable first half of the year in the Company's history***. Our second quarter, and year to date results show that we can tune our expense profile to achieve profitability while executing against our financial and strategic goals. We are building on this momentum and our third quarter outlook combined with our quarterly dividend payments illustrate our continued confidence in the financial strength of the business and our commitment to delivering shareholder value.

(Emphasis added).

38.     The positive trend continued on August 8, 2017, when the Company announced record results in its results for the second quarter 2017. In particular, the Company's revenue increased to $42.8 million, while gross margin increased to 50.9% from the previous year's 50.6%. The announcement further stated that the Company had $73.9 million in cash, equivalents, and marketable securities (along with no debt), as of June 30, 2017.

39.     On November 30, 2017, Jonathan Brolin ("Brolin"), as principal and Managing Member[1] of Edenbrook Capital, LLC ("Edenbrook"), filed a Schedule 13D (the "Edenbrook 13D")[2] with the SEC reporting that as of November 30, 2017, Edenbrook and Brolin were deemed to be the beneficial owners of 2,431,187 shares of YuMe's common stock, constituting approximately 6.96% of the Company's shares issued and outstanding, based on the 34,946,078 shares outstanding as of October 31, 2017.

---

[1] As principal and Managing Member of Edenbrook, Brolin is in the position to determine the investment and voting decisions made by Edenbrook.

[2] Available at https://www.sec.gov/Archives/edgar/data/1415624/000091957417008407/d7750426_13d-a.htm. References to "Issuer" in the Edenbrook 13D mean YuMe.

40. In the Edenbrook 13D, Edenbrook reports being a shareholder of YuMe for over three and a half years, and "believes that <u>this transaction significantly undervalues the [YuMe] and asks that the Board of Directors of [YuME] abandon this transaction on these terms and pursue other paths for creating value for all of the [YuME]'s shareholders.</u>" Edenbrook 13D, Item 4 (emphasis in original).

41. Concerning the Proposed Transaction, the Edenbrook 13D further states, in pertinent part:

> The current market price reflects an enterprise value of approximately $90 million, after accounting for the $41.3 million in cash and marketable securities on the Issuer's balance sheet at September 30, 2017. ***Edenbrook believes that this valuation is much too low***, at barely 3.5 times trailing twelve months adjusted EBITDA, the Issuer's primary metric for assessing its profitability. By comparison, when the deal was announced twelve weeks ago, the implied multiple RhythmOne was paying was over 5x adjusted EBITDA. Further, the press release announcing the deal called for anticipated operating synergies in the first year of $10-12 million. At the same 5x multiple that RhythmeOne offered, those synergies are worth $50-60 million, implying an effective residual enterprise value today for the Issuer of just $35 million at the midpoint, less than 1.5x trailing adjusted EBITDA.
>
> ***Edenbrook believes that the current deal significantly undervalues [YuMe] and that the implied multiples described above are way too low for a business with: 1) a profitable, cash generative business model with a strong balance sheet; 2) a path to accretive growth; 3) a strong book of business amongst top customers; 4) robust gross margins; 5) a unique product offering in a secularly attractive industry, with proprietary data and consumer insight capture that allow the Issuer to deliver improved results for its customers; and, 6) premium video supply, including high value, scarce connected TV inventory***. Further, in light of the industry-wide issues regarding video ads running near inappropriate content, Edenbrook believes that the Issuer's proven capabilities in brand safety for high quality advertisers should afford the Issuer a scarcity value that is not reflected in the current valuation. Comparable transactions have been done in the 8-10x EBITDA range, further suggesting that the valuation is lacking.
>
> In contrast to the well-lit environment that the Issuer provides for its advertisers, ***investors have been left in the dark as to the merits of this transaction***. There was no conference call following the announcement to explain to investors why this is a good transaction and why investors should want to hold stock in the acquiror, given the high stock composition (approximately 2/3 of the consideration at announcement). N***or has there yet been a definitive merger agreement filed to explain the history of the transaction, a document that was expected almost two months ago***. Further, in conjunction with the end of its third quarter, the Issuer held neither a conference call nor issued a press release providing context around the quarter, but simply filed a quarterly 10-Q. While it's not unusual to skip a conference call during an acquisition process, it is unusual to not have a press release. Investors lack context for

understanding whether business trends changed in the last four weeks of the third quarter after the deal was announced, whether sales people were distracted by the pending deal or whether other factors were at play. Because the last month of the quarter has historically been the biggest contributor of revenue in the quarter, Edenbrook believes such context is important.

The proposed deal does not feature a "go shop" provision, but the Board of Directors of the Issuer is obligated to listen to superior proposals. ***Securing such proposals has been made more difficult because shareholders who each own over 10%, and combined own over 31.6%, of the Issuer have agreed to go along with the transaction. This agreement further limits the opportunity to maximize value***. Given the big gap between the current price and the value implied on the date of the announcement, ***Edenbrook believes there is a lot of room for a cash offer that would be superior to the current deal***.

***Edenbrook does not believe that this deal is the best the Issuer and its Board of Directors can do***. Edenbrook understands the need for increasing scale in the industry, but why shouldn't the Issuer be a platform for consolidating the industry, rather than the target of a low valuation offer? Edenbrook believes that the Issuer has done an admirable job of taking excess costs out of the business and generating profitability over the past two years. Why not take that playbook and become a consolidator, perhaps with the backing of a private equity firm?

Edenbrook believes that all shareholders would benefit from pursuing a different path, whether better terms in this deal, a better overall deal with another party or, given this low valuation, simply staying public and revisiting a process down the road. If the current Board of Directors is fatigued and doesn't want to pursue a better deal for all shareholders, let the holders of 68.4% of the Issuer's shares who haven't agreed to this deal find a better outcome.

(Emphasis added).

42.     Furthermore, the valuation analyses conducted by Deutsche Bank in its fairness opinion also show that the value of the Company's common stock has significantly greater value than what is indicated by the Proposed Transaction.

43.     For instance, Deutsche Bank's Selected Transaction Analysis indicated an implied value per YuMe share as high as $5.89, which illustrates that each share of YuMe has an inherent premium of approximately *114%* over the implied value of the consideration for the Proposed Transaction.

44.     Plaintiff seeks to enjoin Defendants from proceeding with the Proposed Transaction. In the event that the Proposed Transaction is consummated, Plaintiff seeks to recover damages from the

Defendants for their breaches of fiduciary duties and from RhythmOne and its affiliates for aiding and abetting said breaches.

**Defendants Cause the Company to Issue a Materially Incomplete and Misleading Solicitation Statement**

45. On January 4, 2018, Defendants caused YuMe to file a materially incomplete and misleading Solicitation Statement with the SEC and disseminated it to the Company's shareholders. The Solicitation Statement misrepresents or omits material information that is necessary for the shareholders to decide whether to tender their shares in in favor of the Proposed Transaction or seek appraisal.

46. Defendants were obligated to carefully review the Solicitation Statement prior to its filing with the SEC and dissemination to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Solicitation Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision concerning whether to tender their shares in favor of the Proposed Transaction.

47. Specifically, as set forth below, the Solicitation Statement omits material information or provides shareholders with materially misleading information concerning: (i) the financial forecasts of RhythmOne; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Deutsche Bank; (iii) certain forecasts of the amount and timing of certain cost savings and operating efficiencies projected by the Company's management to result from the Proposed Transaction; and (iv) Company insiders' potential conflicts of interest. As such, the Company's stockholders are being solicited to tender their shares in connection with the Proposed Transaction or seek appraisal rights without all material information at their disposal.

48. First, the Solicitation Statement fails to provide projections for RhythmOne, in particular omitting its future unlevered free cash flows for the calendar years 2017-2021. Solicitation Statement, at 39.

49. This omission deprives the Company's shareholders of material information necessary to reach a fully informed decision concerning the Proposed Transaction. In particular, disclosure of the

above information is material to the Company's shareholders, since the consideration offered in connection with the Proposed Transaction is RhythmOne stock.

50. Next, pertaining to Deutsche Bank's *Discounted Cash Flow Analysis*, the Solicitation Statement fails to disclose the following key components used in their analysis: (i) the inputs and assumptions underlying the calculation of the discount rate range of 12.0% to 15.8% used for YuMe; (ii) the range of estimated terminal values for YuMe at the end of 2021; (iii) the range of implied enterprise values for YuMe as of September 1, 2017; (iv) YuMe's stock based compensation expense; (v) YuMe's cash taxes; (vi) YuMe's capital expenditures; (vii) YuMe's change in net working capital; (viii) the inputs and assumptions underlying the calculation of the range of perpetuity growth rates of 3.0% to 5.0% used for YuMe; and (ix) YuMe's cash (net of debt). Solicitation Statement, at 38.

51. When a banker's endorsement of the fairness of a transaction is touted to stockholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. As such, omitting this material information renders the statements in the *Discounted Cash Flow Analysis* section of the Solicitation Statement false and/or materially misleading in violation of the Exchange Act.

52. In the section entitled *Other Information*, Deutsche Bank conducted a discounted cash flow analysis for RhythmOne, without disclosing the following key components used in the analysis: (i) the basis for the assumptions underlying the calculation of the discount rate range of 12.0% to 15.8% used for RhythmOne; (ii) the range of estimated terminal values for RhythmOne at the end of 2021; (iii) RhythmOne's unlevered free cash flows for the calendar years 2017 through 2021; (iv) the range of implied enterprise values for RhythmOne as of September 1, 2017; (v) RhythmOne's Adjusted EBITDA; (vi) RhythmOne's stock based compensation expense; (vii) RhythmOne's cash taxes; (viii) RhythmOne's capital expenditures; (ix) RhythmOne's change in net working capital; (x) the inputs and assumptions underlying the calculation of the range of perpetuity growth rates of 3.0% to 5.0% used for RhythmOne; and (xi) RhythmOne's cash (net of debt). Solicitation Statement, at 39.

53. These key inputs are material to YuMe stockholders, and their omission renders the summary of Deutsche Bank's discounted cash flow analyses of RhythmOne materially incomplete and misleading.

54. Regarding Deutsche Bank's Selected Public Companies Analysis, the Solicitation Statement fails to disclose: (i) whether the selected companies whose multiples were considered to be not meaningful and thus excluded from the analysis were excluded because their multiples were above 15.0x or were excluded because their multiples were negative; and (ii) the benchmarking analyses for the Company relating to target companies and the financial and operating characteristics and other factors observed by Deutsche Bank relating to the other selected companies. Solicitation Statement, at 37.

55. The Solicitation Statement also fails to provide material information regarding certain forecasts of the amount and timing of certain cost savings and operating efficiencies projected by the Company's management to result from the Proposed Transaction reviewed and approved for Deutsche Bank's use by YuMe.

56. For instance, the Solicitation Statement states the following, in pertinent part:

> [i]n connection with Deutsche Bank's role as financial advisor to YuMe, and in arriving at its opinion, Deutsche Bank reviewed certain publicly available financial and other information concerning YuMe and certain internal analyses, financial forecasts and other information relating to YuMe prepared by management of YuMe. In addition, Deutsche Bank reviewed certain forecasts of the amount and timing of certain cost savings and operating efficiencies projected by the management of YuMe to result from the Transactions, as approved for Deutsche Bank's use by YuMe.

Solicitation Statement, at 34.

57. The Solicitation Statement, however, fails to disclose the "certain cost savings and operating efficiencies" projected by the Company's management.

58. The omission of this information renders the statements in the *Opinion of YuMe's Financial Advisor* section of the Solicitation Statement false and/or materially misleading in violation of the Exchange Act.

59. Lastly, the Solicitation Statement omits material information concerning the potential conflicts of interest faced by the Company's insiders.

60. The Solicitation Statement discloses that "certain current executive officers of YuMe will have positions as executive officers of RhythmOne following the [Proposed Transaction]."

Solicitation Statement, at 13. In addition, according to the September 5, 2017 press release announcing the Proposed Transaction, "YuMe will appoint two directors to the newly constituted board of directors, one of whom will be Eric Singer, who will become the Chairman of the Board." However, the Solicitation Statement omits the details of any employment related negotiations that occurred between RhythmOne and the Company's management.

61. Communications regarding post-transaction employment and merger-related benefits during the negotiation processes of the underlying transaction must be disclosed to stockholders, as this information is material for shareholders to understand potential conflicts of interest of management and the members of the Board and whether they have motivations that would prevent them (as fiduciaries) from acting solely in the best interests of the Company's shareholders.

62. The omission of this information renders the statements in the *Past Contracts, Transactions, Negotiations and Agreements*, and *Background of the Offer and the Merger* sections of the Solicitation Statement false and/or materially misleading in violation of the Exchange Act.

63. The omission of the above materials renders the Solicitation Statement materially incomplete and misleading, as shareholders will be unable to make a fully informed decision regarding whether to tender their shares in favor of the Proposed Transaction without proper disclosures. As such, shareholders are threatened irreparable harm, warranting the injunctive relief sought herein.

## CLASS ACTION ALLEGATIONS

64. Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and the other public shareholders of YuMe (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any of the Defendants.

65. This action is properly maintainable as a class action for the following reasons:

a. The Class is so numerous that joinder of all members is impracticable. As of October 31, 2017, there were 34,946,078 shares of YuMe common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

b. Questions of law and fact are common to the Class, including, among others: (i) whether Defendants have violated Sections 14(d)(4) of the Exchange Act and Rule 14d-9 promulgated thereunder in connection with the Proposed Transaction; (ii) whether Defendants have violated Section 14(e) and 20(a) of the Exchange Act; and (iii) whether Plaintiff and the Class would be irreparably harmed if the Proposed Transaction is consummated as currently contemplated and pursuant to the Solicitation Statement as currently composed.

c. Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

d. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

e. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

f. A class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

g. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, preliminary and final injunctive relief on behalf of the Class as a whole is entirely appropriate.

# CAUSES OF ACTION

## COUNT I

**Claim for Violation of Section 14(d) of the Exchange Act**

**and Rule 14d-9 Promulgated Thereunder**

**(Against All Defendants)**

66. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

67. Section 14(d)(4) of the Exchange Act and Rule 14d-9 promulgated thereunder makes it a requirement to make full and complete disclosure in connection with tender offers.

68. As discussed herein, the Solicitation Statement, while soliciting shareholder support for the Proposed Transaction, misrepresents and/or omits material facts concerning the Merger.

69. Defendants prepared, reviewed, filed and disseminated the false and misleading Solicitation Statement to YuMe shareholders. In doing so, Defendants knew or recklessly disregarded that the Solicitation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

70. The omissions and incomplete and misleading statements in the Solicitation Statement are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares in favor of the Proposed Transaction. In addition, a reasonable investor would view such information as altering the "total mix" of information made available to shareholders.

71. By virtue of their positions within the Company and/or roles in the process and in the preparation of the Solicitation Statement, Defendants were undoubtedly aware of this information and had previously reviewed it, including participating in the Merger negotiation and sales process and reviewing YuMe's financial advisor's complete financial analyses purportedly summarized in the Solicitation Statement.

72. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Merger.

73. YuMe is deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Solicitation Statement.

74. Defendants knew that Plaintiff and the other members of the Class would rely upon the Solicitation Statement in determining whether to tender their shares in favor of the Merger.

75. As a direct and proximate result of Defendants' unlawful course of conduct in violation of Section 14(d)(4) of the Exchange Act and Rule 14d-9 promulgated thereunder, absent injunctive relief from the Court, Plaintiff and the other members of the Class will suffer irreparable injury by being denied the opportunity to make an informed decision as to whether to tender their shares in favor of the Merger.

76. Plaintiff and the Class have no adequate remedy at law.

## COUNT II

### Claim for Violation of Section 14(e) of the Exchange Act

### (Against All Defendants)

77. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

78. Defendants violated Section 14(e) of the Exchange Act by issuing the Solicitation Statement in which they made false statements of material fact or failed to state all material facts that would be necessary to make the statements made, in light of the circumstances, not misleading, or engaged in deceptive or manipulative acts or practices, in connection with the Proposed Transaction.

79. Defendants knew that Plaintiff and the Company's shareholders would rely upon their statements made in the Solicitation Statement in determining whether to tender shares in favor of the Proposed Transaction.

80. As a direct and proximate result of Defendants' unlawful course of conduct in violation of Section 14(e) of the Exchange Act, absent injunctive relief from the Court, Plaintiff and the other members of the Class will suffer irreparable injury by being denied the opportunity to make an informed decision as to whether to tender their shares in favor of the Proposed Transaction.

## COUNT III

### Claim for Violation of Section 20(a) of the Exchange Act

### (Against the Individual Defendants)

81. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

82. The Individual Defendants acted as controlling persons of YuMe within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of YuMe, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Solicitation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

83. Each of the Individual Defendants were provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

84. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations alleged herein, and exercised the same. The Solicitation Statement contains the unanimous recommendation of each of the Individual Defendants to approve the Merger. They were thus directly connected with and involved in the making of the Solicitation Statement.

85. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(e) of the Exchange Act, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons and the acts described herein, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

86. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

87. Plaintiff and the Class have no adequate remedy at law.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and her counsel as Class Counsel;

| | |
|---|---|
| 1 | B. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction; |
| 2 | |
| 3 | C. Directing the Individual Defendants to disseminate an Amendment to its Solicitation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading; |
| 4 | |
| 5 | |
| 6 | |
| 7 | D. Directing Defendants to account to Plaintiff and the Class for their damages sustained because of the wrongs complained of herein |
| 8 | |
| 9 | E. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and |
| 10 | |
| 11 | F. Granting such other and further relief as this Court may deem just and proper. |

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: January 19, 2018            **REICH RADCLIFFE & HOOVER LLP**
By: /s/ Adam T. Hoover
Adam T. Hoover

**LIFSHITZ & MILLER**
Edward Miller
Attorneys for Plaintiff